MICHELLE L. ROBERTS (SBN: 239092)
Email: mroberts@robertsbartolic.com
**ROBERTS BARTOLIC LLP**
1050 Marina Village Pkwy., Suite 105
Alameda, CA 94501
Telephone:   (510) 992-6130
Facsimile:   (510) 280-7564

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND/SANFRANCISCO DIVISION**

| | |
|---|---|
| THIERRY LEBEAU,<br><br>            Plaintiff,<br><br>    vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>            Defendant, | Case No.  4:17-cv-728<br><br>**COMPLAINT (ERISA)** |

# **JURISDICTION**

1.      Plaintiff Thierry Lebeau ("Plaintiff") brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

# **VENUE**

2.      Plaintiff resides in Alameda County in California.

3.      On information and belief, Defendant Life Insurance Company of North America ("LINA") is a licensed insurance company domiciled in the Commonwealth of Pennsylvania and State of Connecticut.  LINA is a wholly owned subsidiary of CIGNA Holdings, Inc. a Delaware holding company.  LINA offers only group long-term disability ("LTD") policies in various states, including California.

4. Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Plaintiff resides in this District, the breaches alleged occurred in this District, and the ERISA-governed plan at issue was administered in part in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

**INTRADISTRICT ASSIGNMENT**

5. This action arises in Alameda County since Plaintiff resides in, Defendant may be found in, and the employee benefit plan at issue is administered in part in, and some of the breaches alleged occurred in Alameda County. Plaintiff does not oppose assignment to either the Oakland or San Francisco divisions of the United States District Court for the Northern District of California.

**PARTIES**

6. LINA issued a Group Policy, LK-962901, to the Trustee of the Group Insurance Trust for Employers in the Manufacturing Industry, on behalf of Andre-Boudin Bakeries, Inc. ("Boudin"). The Group Policy funds the benefits provided under the Andre-Boudin Long Term Disability Insurance Plan ("the Plan").

7. LINA is the claims administrator for the Plan and makes decisions regarding eligibility for benefits under the terms of the Plan.

8. At all relevant times, Plaintiff was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.

9. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1). At all relevant times, the Plan offered, *inter alia*, LTD benefits to participants, including Plaintiff.

**FACTS**

10. In January 2011, Plaintiff began working as a Food and Beverage Systems Manager for Boudin and was responsible for implementing, programming and supporting corporate Food and Beverage management systems. As stated in Boudin's job description, physical demands included: "Must be able to speak, interact and listen 100% of the time. Must

be capable of standing, sitting, bending, twisting, stooping, and stretching, for eight hours at a time.  Must be flexible and capable of responding to changing priorities and duties.  Must be able to adjust to fluctuations of work pace and volume.  Must be capable of lifting a minimum of 25 pounds.  Must be able to use a computer 100% of the time."  Environmental demands included: "Position resides at the Corporate Office on the 12th floor but will require occasional site visits to other locations.  Requires occasional travel.  Fast paced with extensive contact with people.  Light to moderate background noise."

11. About one year later, Plaintiff began seeking treatment for persistent right leg pain, weakness, and paresthesias.  Although his symptoms started four years earlier, they had improved significantly following a decompressive laminectomy.  However, the symptoms became severe and Plaintiff underwent nerve conduction testing with Dr. Barry S. Mann which ruled out lumbar radiculopathy.  Dr. Mann opined that Plaintiff's symptoms seem related to his previous cervical spinal stenosis and that perhaps the spinothalamic tract was damaged beyond its ability to recover despite the surgical decompression.  For treatment, Plaintiff underwent bilateral L2, L3, L4, and L5 medial branch blocks.  He was also prescribed significant pain medications.

12. Plaintiff's doctor, Dr. Navin Mallavaram, diagnosed him with peripheral autonomic neuropathy, chronic pain syndrome, and cervical and lumbar spondylosis.  As a result of severe symptoms associated with his condition, Plaintiff stopped working altogether on August 3, 2012.  Dr. Mallavaram gave Plaintiff work restrictions of only occasional sitting, standing, walking, and reaching.  He also restricted Plaintiff to occasionally lifting, carrying, pushing, and pulling up to 10 lbs.

13. Plaintiff applied for benefits under the Plan.  The Plan contains the following standard for disability:

> **Definition of Disability/Disabled**
> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
> 1. unable to perform the material duties of his or her Regular Occupation; and
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1. unable to perform the material duties of any occupation for which he or she is,

or may reasonably become, qualified based on education, training or experience; and
2. unable to earn 60% or more of his or her Indexed Earnings.

14. Following a 90-day Elimination Period (essentially a waiting period), the Plan provides Plaintiff income protection of the lesser of 60% of the Employee's monthly Covered Earnings rounded to the nearest dollar or $6,000, and minus other benefits for that month.

15. When investigating his claim, LINA contacted Boudin to confirm Plaintiff's pay. Boudin confirmed that Plaintiff was working 30 hours per week per his doctors' advisement and his hourly rate is $44.5673. LINA did not inquire further about Plaintiff's reduction of hours.

16. On September 4, 2012, LINA referred Plaintiff's claim to Allsup for Social Security assistance. By letter dated November 27, 2012, LINA approved Plaintiff's LTD claim with a date of disability of August 4, 2012.

17. On September 4, 2014, Plaintiff underwent a Functional Capacity Evaluation ("FCE") with TrueCapacity Evaluation in Hayward, California. The FCE was performed by Steve Talajkowski, PT. Mr. Talajkowski gave Plaintiff a "valid" rating on "Overall Validity" and "Overall Pain Validity." He concluded that Plaintiff had several areas of functional limitations, including significant limitations in the cervical and lumbar spine range. Plaintiff could lift zero lbs. below waist level, 10 lbs. to shoulder level, and 8 lbs. overhead due to pain and poor balance. Mr. Talajkowski noted that Plaintiff uses a cane and was unable to perform the step test for unstable gait/balance concerns. For functional job-related activities, Plaintiff could occasionally sit and stand, rarely walk, and never climb or kneel. Occasionally is defined as less than 1/3 of a day.

18. By letter dated November 1, 2014, LINA informed Plaintiff that it continued to find him eligible for ongoing benefits. Plaintiff was only eligible for ongoing benefit if he met the definition of disability after 24 months. In other words, LINA found that Plaintiff was unable to perform the material duties of any occupation for which he is or may reasonably become, qualified based on education, training or experience.

19. Shortly after determining that Plaintiff was disabled from "any occupation," LINA sent him to be examined by Dr. Donald Lee in Fremont, California. Dr. Lee claimed to have spent two hours with Plaintiff and an additional four hours reviewing clinical information and

preparing his report. Dr. Lee observed that Plaintiff had restricted motion of the cervical and thoracic spine. There was tenderness and tightness to palpation over the paraspinal musculature. Sensory examination showed increased sensitivity and pain to pinprick and light touch especially in both lower extremities, but most pronounced over the right anterior thigh. Dr. Lee further observed that Plaintiff has an antalgic gain on the right and he was not able to walk on his heels. Dr. Lee concluded that Plaintiff was physically functionally impaired. He noted that Plaintiff has allodynia in his lower extremities that is "quite pronounced. He is on high dose pain medications and need to use a spinal cord stimulator to barely maintain activities of daily living. He has restrictions with active range of motion in the cervical and lumbar spine." Dr. Lee gave Plaintiff restrictions of sitting, standing, walking, reaching overhead, reaching desk level, reaching below waist, climbing regular stairs, balancing, stooping, kneeling, crouching, crawling, exposure to extremes in heat, and a number of other restrictions. In an accompanied Physical Abilities Assessment Form, Dr. Lee checked that Plaintiff could frequently sit (2.5-5.5 hours), and occasionally (<2.5 hours) stand, walk, and reach overhead and below the waist.

20. In order for Plaintiff to be physically able to perform sedentary work, he must be able to sit for six hours. *See Armani v. Nw. Mut. Life Ins. Co.*, No. 14-56866, __F.3d__, 2016 WL 6543523 (9th Cir. Nov. 4, 2016). Dr. Lee's opinion cannot be read to support any claim that Plaintiff is capable of full-time sedentary work.

21. On March 5, 2015, LINA obtained a Transferable Skills Analysis ("TSA") from Melissa Mendez, M.S., CRC based on the restrictions and limitations given only by Dr. Lee. Ms. Mendez did not rely on the FCE or any of the restrictions and limitations imposed by Plaintiff's treating doctors. She did not address any limitations caused by Plaintiff's pain symptoms and medications. Based on very limited data, the TSA concluded that Plaintiff could perform as a Department Manager, Customer-Complaint Service Supervisor, and Food and Beverage Controller.

22. LINA terminated Plaintiff's LTD benefits effective March 11, 2015. Later that month, Plaintiff submitted a written appeal of LINA's decision. Included in his appeal was a March 20, 2015 letter from Dr. Dennis Nakamura explaining that Plaintiff is permanently

disabled from any occupation whatsoever. He further explained that Plaintiff has constant neuropathic pain, dysesthesias, and allodynia. Plaintiff requires high-dose pain medication and has an implanted spinal cord stimulator for palliative care. Dr. Mallavaram also provided a letter dated March 24, 2015, wherein he explains that Plaintiff has a diagnosis of cervical laminoplasty, chronic painful neuropathy, and chronic pain syndrome. Plaintiff has had multiple spine injections and a spinal cord stimulator implant. Like Dr. Nakamura, Dr. Mallavaram also explained that Plaintiff takes high dosage of opiates and should be considered permanently disabled due to ongoing pain, limited use of his right leg, and high dose opiates to maintain function.

23. By letter dated October 20, 2015, LINA informed Plaintiff that it was upholding the decision to stop paying his claim beyond March 11, 2015. It relied on a pure paper review from Dr. Marc Rosen. LINA claimed that there was no recent documentation of severe functional deficits noted. It acknowledged that a November 2014 CT scan showed central canal stenosis at C6-7, but claimed that more recent clinical findings did not correlate the spinal stenosis at C6-7. LINA's reasoning is completely nonsensical. As Chief Judge Kozinski noted in *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008): "After all, MetLife had been paying Saffon long-term disability benefits for a year, which suggests that she was already disabled. In order to find her no longer disabled, one would expect the MRIs to show an improvement, not a lack of degeneration." Similarly here, Plaintiff has been long suffering from a chronic and degenerative spinal condition. His doctors, an FCE, and an independent examination showed findings of significant impairment. The only basis for LINA to terminate Plaintiff's claim is if it determined that he *improved*. No such determination is supported by the record.

24. Plaintiff appealed this denial by letter dated February 17, 2016. By letter dated April 18, 2016, LINA upheld its prior decision to terminate Plaintiff's claim. It informed Plaintiff that he exhausted all administrative levels of appeal and no further appeals will be considered.

25. Plaintiff has exhausted any and all administrative remedies required before bringing suit.

26. LINA's termination of Plaintiff's LTD benefits is arbitrary and contrary to the weight of the evidence.

## COUNT I
### [Claim for Benefits Pursuant to ERISA § 502(a)(1)(B)]

27. Plaintiff incorporates Paragraphs 1 through 26 as though fully set forth herein.

28. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

29. At all relevant times, Plaintiff has been entitled to LTD benefits under the Plan. By denying Plaintiff's claim for LTD benefits under the Plan, and by related acts and omissions, Defendant has violated, and continues to violate, the terms of the Plan and Plaintiff's rights thereunder.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A. Declare that Defendant violated the terms of the Plan by denying Plaintiff's claim for LTD benefits;

B. Order Defendant to pay LTD benefits to Plaintiff pursuant to the terms of the Plan through the date judgment is entered herein; together with prejudgment interest on each and every such monthly payment through the date judgment is entered herein;

C. Declare Plaintiff's right to reinstatement into the Plan and his right to receive future LTD benefit payments under the terms of the LTD Plan for as long as he remains disabled under the Plan's terms;

D. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

E. Provide such other relief as the Court deems equitable and just.

Dated: February 14, 2017          Respectfully submitted,

                                  ROBERTS BARTOLIC LLP
                                  /s/ *Michelle L. Roberts*
                                  Michelle L. Roberts